UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SYRIS T. BIRKLEY,

                Plaintiff,

v.                                              Case No. 22-cv-1366-pp

J. TAYLOR and AMIKA AVERY,

                Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

      Syris T. Birkley, who was incarcerated at the Milwaukee County Jail at the time he filed this complaint[1] and is representing himself, sues under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1).

---

[1] The plaintiff since has been released and lives on 36th Street in Milwaukee. Dkt. No. 12.

1

He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On January 5, 2023, the court ordered the plaintiff did not have to pay an initial partial filing fee. Dkt. No. 9. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Complaint**

   A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

    B.    The Plaintiff's Allegations

The plaintiff, who alleges that as of the date he filed the complaint, he had been a pretrial detainee at the Milwaukee County Jail since September 19, 2020, has sued J. Taylor and Amika Avery. Dkt. No. 1 at 1-2. The plaintiff alleges that in the jail's booking room, Taylor told him that he heard the plaintiff likes "bussing heads" and "can he see?" Id. at 2. The plaintiff says this is "jail slang" for Taylor asking to see his penis and that Taylor said he would send the plaintiff to the "hole" in "4D" if he didn't do it. Id. The plaintiff alleges he did not want to tell Taylor he was uncomfortable, so he asked if he could

3

talk to Avery, who is the supervisor, about his religious head dress (a fez) and that Taylor said, "go right ahead with your fine ass." Id.

The plaintiff alleges that he walked to the desk and stood with his hands folded while Taylor stood behind him; K. Smith (not a defendant) stood at the desk and Avery was on the phone at the booking station. Id. at 2-3. The plaintiff says that when he started to speak to K. Smith about the sexual harassment, Taylor grabbed his left elbow and then grabbed him with both hands and tried to "slam" him. Id. at 3. The plaintiff asserts that the lieutenant—Avery—was at the booking station and could have ordered Taylor to stop. Id. The plaintiff states that he held his hands up in a non-combative stance and that Avery looked on. Id. Taylor allegedly started choking the plaintiff and Avery, who was still on the phone, didn't say anything. Id. The plaintiff alleges that to stop the assault, he threw Taylor off him, put his hands back up and asked Avery why she didn't tell Taylor to stop assaulting him. Id. Avery allegedly then shot the plaintiff with her Taser while he held his hands in a non-combative position. Id. He says that Taylor got off the ground and, while the plaintiff still held his hand up in a non-combative position, shot him in his back with a Taser. Id. The plaintiff states that he fell to the ground and Taylor jumped on his back and pushed his knee in the plaintiff's back area while he held the trigger and let lightning surge through the plaintiff's body. Id. The plaintiff says that staff then secured him in a "rip belt" and placed him on the bench. Id. at 3-4. Taylor was allegedly then called away. Id. at 4.

4

The plaintiff alleges that Officer Carall (not a defendant) asked him happened and when he started to tell Carall about Taylor's sexual statements and misconduct, Taylor came out of nowhere, grabbed him by the "rip-belt" and dragged him away to stop the conversation. Id. Several staff members allegedly responded to the incident and told "him" (presumably Taylor) to leave. Id. The plaintiff states that they planned "to punish [the plaintiff] for being assaulted" and instead of taking him to "4D seg" they kept him on the bench for hours and didn't feed him his kosher diet. Id. The plaintiff says they placed him in a cell in the booking room and had him sleep on a brick with no mattress, no hygiene, no phone and no religious diet. Id. From September 19 to 20, Cunningham and other unnamed officers (not defendants) allegedly saw these conditions when they walked by the plaintiff's cell during rounds. Id. He says that the next day, he was moved to "4D seg." Id. The plaintiff states that the day after that, Cunningham held his hearing during which she made her decision without reviewing any footage and she asked the plaintiff why he assaulted and choked her officer. Id. She allegedly did not let the plaintiff testify or present witnesses. Id. The plaintiff says they found him not guilty "of what she had just said" but found him guilty of everything else, and sentenced him to "40 plus days in seg." Id.

According to the plaintiff, jail policy (DOC 350.24) provides that incarcerated individuals have fourteen days to appeal the hearing decision. Id. at 4. The plaintiff alleges that on September 29, 2022, he filed an appeal of Cunningham's decision and staff incorrectly told him he only had five days to

5

appeal. Id. at 5. He also says Cunningham denied him his appeal and that she shouldn't have done that because she sentenced him. Id.

The plaintiff alleges that from September 19 until September 23 or 24, he was not allowed to leave his cell and from September 19 until to October 3, he was denied religious kosher diet. Id. He states that from September 20 until November 10, his cell had black mold, feces and urine caked in the toilet and that he suffered migraines, headaches, dizziness, double vision and throwing up from breathing the fumes from another man's "bio" for months. Id. The plaintiff also alleges that his back and legs go numb and twitch, he cannot bend over without pain and that he has permanent nerve damage to his legs, back and spine from staff assaulting him. Id.

The plaintiff alleges that in 4D Seg on October 20, 2022, Nurse Natasha (not a defendant) came to his cell and saw the conditions there. Id. He says that on October 23, Dr. Virta (not a defendant) saw his cell conditions as well as his medical condition. Id. The plaintiff also alleges that on November 1, 2022, supervisors Aaron, Dobson William Duckert and J. Briggs (not defendants) came to "sub pod C" with the jail's inspector, who stopped at the plaintiff's cell. Id. at 6. He says he told the inspector about the conditions. Id. The plaintiff says that the conditions injured him physically and caused him disease. Id. He states that "they" subjected him to the conditions to punish him for what happened to Taylor. Id.

The plaintiff alleges that on November 7, 2022 he completed his time on discipline status and moved to general population status, but he is still was in

the "hole = 4D seg on GP status[.]" as of the date he wrote the complaint. Id. The plaintiff alleges that from November 7 until November 10, he was subjected to these conditions. Id. The plaintiff states that the law requires the sheriff to post all changes of conditions and give written notice to incarcerated individuals and staff in accordance with the Sheriff's Manual. Id. at 7. He says this didn't happen and that he did not get daily exercise. Id. The plaintiff alleges that from 2020, "we" have been locked in the room "30 plus hours a day" with three hours out. Id. He says that in 2022, he has been locked in twenty-plus hours a day, only four hours a day out of his cell. Id.

The plaintiff alleges that he has requested from jail staff indigent legal materials such as boxes, "flex pens" and law books and that they don't give them to him, or they limit what he requests. Id. He says staff deprived him of the law books he needed to define legal terms. Id. at 8. The plaintiff says that staff have denied him access to the courts by not having an adequate law library and legal materials. Id. at 9. He says that the library does not have state or federal law books or anything to teach them properly how to do what they need. Id.

The plaintiff claims that he is suing for unconstitutional living conditions, "cruel and unusual corporal punishment," sexual harassment, deliberate indifference, negligence, misconduct, assault, retaliation, "conspiracy to deprive the national aboriginal mu'ur [sic] of his rights." Id. at 9. For relief, the plaintiff seeks injunctive relief and monetary damages. Id. at 10.

C.  Analysis

The plaintiff has sued J. Taylor and Amika Avery, "et, al corproration [sic]." Dkt. No. 1 at 1. He alleges that Taylor asked to see the plaintiff's penis and said that he would send the plaintiff to segregation if he didn't show it to him. The plaintiff also alleges that Taylor and Avery physically assaulted him after the plaintiff went to the officer's desk to tell Avery about the sexual harassment. The Fourteenth Amendment applies to excessive force claims brought by pre-conviction detainees; the standard is solely objective. Hardeman v. Curran, 933 F.3d 816, 822 (7th Cir. 2019) (quoting Kingsley v. Hendrickson, 576 U.S. 389, 396-97 (2015)). "[A] pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." Kingsley, 576 U.S. at 396-97. The plaintiff may proceed on an excessive force claim under the Fourteenth Amendment against Taylor and Avery.

The plaintiff also may proceed on a claim under the Fourteenth Amendment based on allegations that Taylor sexually harassed him when he told the plaintiff to show him his penis. See Chittum v. Hare, No. 21-2129, 2022 WL 3584667, at *3 and *3 n.2 (7th Cir. Aug. 22, 2022) (related to sexual misconduct, using minimal physical force, or even none at all, can violate a pretrial detainee's (or a convicted prisoner's) constitutional rights) (citing Washington v. Hively, 695 F.3d 641, 643 (7th Cir. 2012)); see also Beal v. Foster, 803 F.3d 356, 357 (7th Cir. 2015) (dismissal of Eighth Amendment claim based on harassment was premature, where plaintiff alleged

8

psychological trauma to the extent of seeking mental health care; harassment was sexual in nature and included physical conduct (but no contact) beyond the verbal harassment; and harassment arguably placed plaintiff at greater danger of assault by other prisoners).

The plaintiff also alleges that officers retaliated against him by placing him in booking room cell for two days, subjected him to unconstitutional conditions of confinement based on the condition of the booking room cell and the segregation cell to which he subsequently moved, violated his due process rights by not letting him testify or present witnesses at his disciplinary hearing and denied him access to legal materials. The court will not allow the plaintiff to proceed on these claims in this complaint because he has not named any defendants related to these allegations. His use of the Latin words "et al," which means "and others"—is too vague to identify other officers as defendants. Even if the plaintiff had listed other officers in the caption of the complaint, the plaintiff has not stated a claim for violation of his right of access to the courts because he has not alleged that the lack of access to legal materials caused actual injury by hindering his ability to pursue a legitimate challenge to a conviction, sentence or prison conditions. See Marshall v. Knight, 445 F.3d 965, 968 (7th Cir. 2006).

### III.  Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

9

Under an informal service agreement between Milwaukee County and this court, the court will electronically transmit a copy of the complaint and this order to Milwaukee County for service on defendants J. Taylor and Amika Avery. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within 60 days.

The court **ORDERS** that the plaintiff must pay the $350 filing fee to the Clerk of Court over time, as he is able.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that the plaintiff must file all pleadings and attachments with the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court also advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court

advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin, this 11th day of June, 2023.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**